**Alta SANDO, Respondent,**

v.

**Betty Bond Sando PHILLIPS and Carl (J. O.) Phillips, her husband, Appellants.**

No. 46700.

Supreme Court of Missouri,

Division No. 2.

Jan. 12, 1959.

Bradley & Noble, John H. Bradley, John W. Noble, Kennett, for defendants-appellants.

Ward & Reeves, Caruthersville, for respondent.

STOCKARD, Commissioner.

This is an action by Mrs. Alta Sando, widow of Leo Sando, against Betty Bond Sando Phillips and her husband, Carl (J. O.) Phillips, for the assignment of dower in 160 acres of land in Dunklin County, Missouri. She also seeks damages for the wrongful withholding of dower and her share of the rents and profits from the land. The trial court held in her favor, decreed that dower be assigned, and entered judgment againt both defendants in the sum of $2,825 as "her undivided one-third interest

in and to the net income and profits of said real estate since June 17, 1955," the date of the death of Leo Sando. Defendants have appealed, but they make no contention on this appeal that the award of $2,825 is erroneous if dower was properly assigned. The parties will be referred to by name or as designated in the trial court.

■ Appellate jurisdiction is in this court because plaintiff seeks to have the fee title to certain lands held by one defendant reduced by taking therefrom a life estate in one-third of the lands, and the judgment appealed from decrees such a life estate in plaintiff. Title to real estate is therefore involved within the meaning of Art. V, Sec. 3, Constitution of Missouri, V.A.M.S.

Leo Sando was the owner of two separated tracts of land each consisting of 80 acres. In 1945, after his first wife died and before he was remarried, he executed two general warranty deeds, each describing a different 80 acres, with his then unmarried daughter Betty being named as grantee. The deeds were not delivered at the time of execution. Leo Sando married plaintiff on May 8, 1947, and died June 17, 1955, testate, and in his will, which was dated September 8, 1954, he specifically described the two 80-acre tracts of land and devised them to Betty, who he also designated as executrix of his will. In the inventory of her father's estate Betty listed the total amount of personal property to be $9,044, and as to real estate she made the following statement: "The executrix does not list any real estate in the inventory for the reason that the deceased did not own any real estate at the time of his death. The deceased conveyed by warranty deeds the real estate described in the will to the executrix, his daughter, and delivered the deeds to her in 1945." Plaintiff exercised her election and renounced the will. Betty continued to serve as executrix and was discharged on August 28, 1956, after approval of her final settlement.

Betty and her husband, as appellants, contend on this appeal that the trial court erred in awarding plaintiff dower in the 160 acres of land because there was an effective delivery of the two deeds to Betty before the marriage of plaintiff to Leo Sando. Plaintiff contends that there was no effective delivery of the two deeds, and she also contends that if it be assumed that there was such a delivery, by acting as executrix of her father's will Betty is now estopped from claiming title to the land other than by reason of the will.

■ Effective January 1, 1956, dower was abolished. See Section 474.110 RSMo 1949, V.A.M.S., and Section 1 of the Probate Code of 1955, Laws of Missouri 1955, p. 390; V.A.M.S. preceding section 474.010. But, "any such estate now vested" was not affected by the abolition of dower. Section 474.110, supra. This case was tried on the theory that plaintiff's dower estate, if any, vested before January 1, 1956, and we shall rule the case on the issues so presented.

There is no question but that the deed to the north 80 acres was signed by Leo Sando on July 11, 1945, and that the deed to the south 80 acres was signed by Leo Sando on July 18, 1945. Both deeds were prepared by J. W. Karnes at the request of and according to the instructions of Leo Sando, and they were signed by him in Karnes' presence, and the acknowledgment on each deed was taken by Karnes in his capacity as notary public. Betty was named as grantee in both deeds but she was not present on either occasion, and Karnes does not know what Leo Sando did with either of the two deeds. The deed dated July 11, 1945, recites a consideration of $2,000, and the consideration recited in the other deed is $1,000. Canceled revenue stamps were on the two deeds when offered in evidence, but Karnes did not place them there and they were not placed on the deeds in his presence. By whom and when the stamps were placed on the deeds, and whether any consideration was or was not paid, is not revealed by the evidence, but from the record it is apparent that Betty claims the land as a gift and not by purchase: The deed to the north 80

acres shows on its face that it was "Signed and Delivered" in the presence of Lester N. Wilkins, and the deed to the south 80 acres shows on its face that it was "Signed and Delivered" in the presence of W. M. Thompson. However, Wilkins testified that Leo Sando brought the deed to him at his drug store, that it was then already signed and acknowledged, that he (Wilkins) signed it as witness, and that Leo Sando was alone and Betty was not with him. Thompson testified that when he signed the deed to the south 80 acres as a witness he was in Leo Sando's home, and that he and Leo were alone and Betty was not present. Neither Wilkins nor Thompson witnessed any delivery of either deed to the grantee or any act evidencing a delivery. Both deeds were caused to be recorded on June 28, 1955, apparently by Betty, which was eleven days after the death of Leo Sando, almost ten years after they were executed, and a little more than eight years after Leo Sando's marriage to plaintiff.

Following the execution of the two deeds and until his death Leo Sando remained in possession of the 160 acres; he continued to farm the land and manage it exactly as he had done before the deeds were executed; he paid all taxes and special assessments against the land; he collected all the rents therefrom; and he paid "the expenses and outlays for the upkeep of the land." The record contains a copy of a document dated January 26, 1953, entitled "Notice of Approved Practices and Report of Performance 1953 Agricultural Conservation Program," which is labeled "Farmer's Copy," in which Leo Sando is listed as the "owner" of the 160 acres. However, there is no showing that either Leo Sando or Betty prepared this form.

Defendants contend that the deeds were delivered to Betty in 1946. They rely upon the following testimony to establish that there was an effective delivery of the deeds prior to the marriage of Leo Sando to plaintiff. John Sando, an older brother of Leo, was permitted to testify that in August or September of 1946, he and Leo were on their way home and that Leo stated to him that "he delivered two deeds," and also that "He deeded Betty both the home place and the French place, that he wanted Betty to have them regardless of what happened to him, he and Betty's mother had worked hard to pay for those places, and whatever happened to him he wanted Betty to have that land." He also testified that at the same time Leo told him "he had made two deeds," and that the "land was all he had to live on and he meant to operate the land and take the revenue off of it, and pay the taxes, insurance, and the upkeep of the land as long as he lived." Carl Phillips, Betty's husband, and a defendant in this case, was permitted to testify that he was in the kitchen of Leo Sando's home in the latter part of November or the first part of December of 1946, and at that time "Leo Sando handed Betty the deeds," and that when Leo Sando died the two deeds "were in my lock box, mine and Betty's lock box at the Senath State Bank." Carl Phillips also stated, but the trial court struck the testimony out on objection of plaintiff, that "Mr. Sando handed them [the deeds] to Betty and said 'Here are the deeds for this land, and put them in your and J. O.'s lock box.' "

This case is unlike the usual one involving the question of the delivery of a deed to real estate in that plaintiff does not need to challenge the validity of the deeds on the ground that no effective delivery was made during the lifetime of the grantor, although she unnecessarily does so by her pleadings. Plaintiff only needed to show that at some time during her marriage to Leo Sando he was seized of an estate of inheritance in the 160 acres, and that she had not relinquished her right of dower therein. See Section 469.010 RSMo 1949, V.A.M.S., now repealed. It was admitted that prior to the execution of the two deeds Leo Sando was the owner of the 160 acres in fee, and that he was the record owner of the land

until his death. There is no contention that he made any conveyance, other than by the two deeds to Betty, prior to his marriage to plaintiff. Therefore, by the additional showing of a valid marriage and the death of Leo Sando plaintiff made a prima facie showing of her right to dower in the 160 acres. The burden was then on the defendants to present evidence that Leo Sando had made an effective transfer of title to Betty, not just sometime prior to his death, but before his marriage to plaintiff. This requires a satisfactory showing that in addition to the execution of the two deeds, Leo Sando made an effective delivery of the deeds to Betty before May 8, 1947, because as a general rule, a deed takes effect from the date of its delivery, not from the time of its execution. 26 C.J.S. Deeds § 94. Stated another way, delivery is essential to the validity of a deed. Reasor v. Marshall, 359 Mo. 130, 221 S.W.2d 111.

In the absence of evidence, there is a general presumption that a deed in the possession of the grantee was delivered on the day of its acknowledgment, Breshears v. Breshears, 360 Mo. 1057, 232 S.W.2d 460, 462, or recording, Ridenour v. Duncan, Mo.Sup., 291 S.W.2d 900, 907, but defendants admit these deeds were not delivered when acknowledged, and the grantor was dead when they were recorded. Therefore, the essential and determinative question on this appeal is whether defendants have presented evidence, which, when considered in connection with all the other facts and circumstances of this case, satisfactorily establishes that Leo Sando effectively divested himself of title by transferring it to Betty prior to May 8, 1947, the date of his marriage to plaintiff. The only case cited by defendants on the question of delivery is Zumwalt v. Forbis, 349 Mo. 752, 163 S.W. 2d 574, 575, and that case is cited in support of their contention that a party "who seeks to invalidate a deed must affirmatively prove the invalidity or irregularity," and if the denial of the validity is based

upon nondelivery, "the burden of proving nondelivery is upon one who seeks to set aside the deed." That case is unquestionably correct, but as previously noted, plaintiff's claim to dower does not rest on the invalidity of the deeds, but on their effective date.

No request was made for any findings of fact and conclusions of law, and the trial court made none. See Section 510.310 RSMo 1949, V.A.M.S. The trial court made a general finding for plaintiff, and as provided by the above mentioned statute, "all fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached." See also Shirley v. Norfleet, Mo.Sup., 315 S.W.2d 715, 721. In our review of this nonjury case we review the record de novo and determine the credibility, weight and value of the testimony and evidence in the case, but in doing so we give due deference to the trial court's findings as evidenced by the result reached, and the fact that he heard the testimony and was able to observe the witnesses and thereby judge their credibility. Furthermore, we are admonished by Section 510.310, supra, that "The judgment shall not be set aside unless clearly erroneous."

On the factual issue of whether there was an effective delivery of the deeds to Betty before the marriage of Leo Sando to plaintiff, the testimony of John Sando and Carl Phillips are directly in conflict with certain circumstances which strongly indicate that Leo Sando did not effectively transfer to Betty the title to the 160 acres before his marriage to plaintiff. The deeds themselves indicate that the transfer of the 160 acres of land was to have been for a consideration of $3,000, but Betty claims the transfer was as a gift, and Leo Sando never relinquished any control whatever over the land. It is true that these facts, standing alone, would not prevent an otherwise effective transfer of title, but they are circumstances en-

titled to consideration. However, the most persuasive fact, when considered in connection with the circumstances just mentioned, is that in September 1954, more than nine years after execution and almost eight years after defendants contend that the deeds were delivered, Leo Sando executed his will in which he specifically described the land in question and devised it to Betty. It is therefore apparent that at that time Leo Sando was of the opinion that he was still the owner of the land and had the power of its disposition. This fact, when considered with the other circumstances and the fact that he remained in complete possession and control of the land, indicates that Leo Sando did not intend to divest himself of title prior to his death, or at least he thought he had not done so. In addition, while there is no duty on a grantee to record a deed, and the failure to record does not in any way affect the validity of a deed between the parties, if Betty did receive complete possession and control of the deeds in 1946 as she contends, there was no reason why she did not then, or soon thereafter, record them, and her failure to do so, while by no means conclusive, is at least a factor entitled to some consideration by the trial court on the issue of fact of whether she did receive complete possession of the deeds.

The solution to this case necessarily turns on the weight and credibility of the evidence touching on the factual issue of an effective delivery of the deeds prior to May 8, 1947. The trial court resolved this factual issue in favor of plaintiff, and from the above facts and circumstances it is readily apparent that in this determination the trial court was not "clearly erroneous." When we take into consideration that the trial court had the opportunity to hear the testimony of the witnesses and to observe their demeanor on the witness stand, we cannot say that by reason of our review of the whole record we should not defer to the findings of the trial court on this factual issue of delivery of the deeds which is both supported by and in conflict with the testimony and the circumstances.

By reason of the above result we need not determine the effect of Betty serving as executrix of her father's estate.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.