Marshall E. Livihgstoh, J.
This is an action to recover $20,500, the stipulated amount of a fire loss which occurred at 198 Culver Road, Rochester, New York, either from the JEtna Casualty & Surety Company (AStna), if title to the property did not pass, or in the alternative, from the defendants Arcieri, if it is found that title did pass.
The Arcieris have brought a third-party action against Nationwide Mutual Insurance Companies (Nationwide), which issued an oral binder on the said premises in anticipation of the conveyance of the property to the Arcieris by the plaintiffs.
The Community Savings Bank of Rochester (Bank) is also interested by reason of the mortgagee clause in Aetna’s policy and has cross-claimed against JEtna for the amount due, pursuant to such policy. vEtna concedes that it is liable to the Bank by reason of the terms of the mortgagee clause, and therefore, cross-claims against the Arcieris for any amount it might be .required to pay to the Bank, if it is found that the Arcieris were the owners of the property at the time of the fire.
*253 There is no dispute as to the essential facts. The sole question for determination is whether or not there was a delivery and acceptance of the deed so that the grant took effect, and whether or not the transfer from the plaintiffs to the Arcieris was complete within the meaning of section 244 of the Real Property Law on January 15, 1971, prior to the fire which caused the loss for which claim is made here.
Section 244 of the Real Property Law provides: “ A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed.”
In November, 1970 the plaintiffs accepted an offer from Mr. Arcieri to purchase their property at 198 Culver Road. The offer provided that “ risk of loss or damage by fire until closing is assumed by seller, and the fact of such substantional [sic] loss or damage shall relieve either party from performance at his option ”.
January 15, 1971 was the date finally set for closing, and Mr. Powderly, accompanied by his attorney, Mr. Harvey, attended the closing at 10:00 a.m. at the offices of the attorneys for the Bank, which expected to continue as mortgagee when the Arcieris took title.
Mr. Wayne DeHond was the attorney representing the Bank. Mr. Thomas Farrell, one of the attorneys for the Arcieris, attended in their behalf, although they were not present.
Because the Arcieris were assuming the existing mortgage and obtaining additional mortgage moneys from the Bank, it was necessary that they sign the deed containing an assumption clause, as well as an additional bond and mortgage, including an agreement consolidating the two mortgages, and other papers.
The rental, taxes and water adjustments were made, and it appears that the Powderlys were entitled to a net amount of $11,772.46. The Bank’s mortgage balance of $15,072.35 was to be assumed by the Arcieris.
Mr. Harvey handed the deed, executed by the Powderlys, to Mr. Farrell with the grantee space blank. Mr. Farrell then gave Mr. Harvey his firm’s check for $7,043.81 with a direction ■to hold it until the abstract was redated showing clear title and the papers were recorded. Mr. Farrell said he would notify Mr. Harvey in Canandaigua when this was done. Mr. DeHond was to send Mr. Harvey a bank draft for $4,728.65 as soon as the closing consummated, upon all the papers being recorded and the abstract redated.
*254 Mr. Harvey and Mr. Powderly then left Mr. DeHond’s office to satisfy certain judgments on record against Mr. Powderly and to pay the water bill. They also stopped at the realtor’s office and left a check for the commission.
In the meantime Mr. Farrell also received the various papers from Mr. DeHond for his clients’ execution and returned to his office. The Arcieris executed the deed and the other documents at about 1:00 p.m. Mr. Farrell then attempted to contact a Nationwide agent, but was unsuccessful until 3:15 p.m:., when he arranged for an immediate binder with Nationwide in the amount of $30,000 on behalf of the Arcieris.
The first alarm of fire at the premises was turned in on January 15, 1971, via Box 627, at 1519 hours, or 3:19 p.m., according to the Rochester Fire Department’s records.
While Mr. Farrell was arranging for the Arcieris ’ fire insurance, Mr. Arcieri had been to the premises with the keys, talked with one of the tenants, and accepted a postdated check for rent, procured a certificate of occupancy, and in general acted like an owner.
This is the background against which this unusual loss took place.
The statutory requirements and legal principles of section 5-703 of the General Obligations Law, section 244 of the Real Property Law, the parol evidence rule, whether or not there was intentional delivery by the seller and acceptance by the buyer, and a mutual mistake of fact between the Arcieris and Nationwide, all present problems for resolution.
Disposing of these question's in reverse order, I first consider whether there was a mutual mistake of fact between the Arcieris and Nationwide. The oral binder was given by Nationwide to Mr. Farrell for the Arcieris at 3:15 p.m. on January 15, 1971. The box alarm was rung in at 3:19 p.m. on that day. I find that the onset of the fire had to precede the alarm by more than four minutes.
The offer to purchase contained .a reservation by the parties that if a fire occurred before closing, either had the option of being relieved. This Mr. Arcieri chose to do. In other words, at the time the binder was given, the fire had started, and Mr. Arcieri availed himself of the escape clause in his offer because the damage was substantial. There was a mutual mistake of fact on his part and on the part of Nationwide, for both assumed an insurable building at the time of the binder. In sum, both parties assumed an insurable risk which in fact turned out to be ip the throes pf a fire at about the same time the binder *255 was given. Therefore, the third-party complaint must be dismissed, without- costs (37 N. Y. Jur., Mistake, Accident or Surprise, §§ 3-5).
The questions presented by section 5-703 of the General Obligations Law, 'Section 244 of the Real Property Law, the parol evidence rule, and what constitutes acceptance and delivery are all so interwoven in the factual fabric that they cannot be dealt with separately.
Section 244 of the Real Property Law is the basic statute. It provides that the grant or conveyance is effective only from its “ delivery ”. “ Delivery ” means an unconditional delivery and an unconditional acceptance by the buyer (see Ten Eyck v. Whitbeck, 156 N. Y. 341; Brackett v. Barney, 28 N. Y. 333).
Section 5-703 of the General Obligations Law, among other things, prohibits oral testimony accompanying the delivery of a deed to restrict or condition such delivery. Thus any oral condition accompanying the delivery of a deed is inadmissible since the grantor, having delivered a deed, cannot affect its operation. °
Defendant /Etna contends that there was an absolute delivery. However, as was .said in Ten Eyck v. Whitbeck (supra, p.,352) : “ But these presumptions maybe repelled by proof of attendant facts and subsequent circumstances, such as the possession and control of the property by the grantor, the declarations of the supposed grantee which are inconsistent with the transfer of the title, which, with the acts and conduct of the parties in relation to the property, are all circumstances to be considered in determining whether there has been a delivery and acceptance of the deed.”
It is true Mr. Harvey handed the executed deed to Mr. Farrell. Mr. DeHond, as the Bank’s attorney, likewise handed Mr. Farrell the bond and mortgage for the additional moneys, the agreement consolidating the old mortgage, which was being assumed by the Arcieris, and the new bond and mortgage, as well as other papers, all to be executed by the buyers. In addition, Mr. Farrell had the abstract, and from that point on was the agent for the Powderlys and the Bank for a special purpose to complete the closing. This was clearly understood, because when Mr. Farrell delivered his firm’s check to Mr. Harvey, he specifically required that it be held and not used until he notified Mr. Harvey that the transfer was complete.
The recording of the papers and the redating of the abstract-to show whether the title was clear, I hold, were all conditions precedent to a delivery by the sellers and an acceptance by the *256 buyers. That this was the intention of all the parties to the closing is buttressed by the fact that all parties knew there were certain 'Outstanding judgments against the plaintiffs which had to be satisfied of record before either the Arcieris would accept the deed and make their payment, or before the Bank would advance the additional money on the consolidated bond and mortgage.
The undisputed proof of the circumstances attendant upon the closing indicates to me that, until Mr. Farrell satisfied himself that the title was clear and recorded the papers, there could be no acceptance by the Arcieris.
Mr. Arcieri’s actions in securing the keys, getting a postdated check for the rental, executing the assumption clause and presumably the other papers required by the Bank, arranging for estimates of work to be done in order to procure a certificate of occupancy, were all steps looking to an acceptance of thé transfer. However, the final steps by Mr. Farrell, as the buyers’ attorney, were never completed because the fire intervened. Mr. Arcieri at once, on learning of the fire, backed off, and sought refuge in the escape clause in the purchase offer.
Parol evidence may not show thqt a deed was delivered conditionally. However, testimony is admissible to show conditions precedent which were to be ¡fulfilled before the delivery was to be effective.
In Hicks v. Bush (10 N Y 2d 488, 491), the court said: “ The applicable law is clear, the relevant principles settled. Parql testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement (see Saltzman v. Barson, 239 N. Y. 332, 337; Grannis v. Stevens, 216 N. Y. 583, 587; Reynolds v. Robinson, 110 N. Y. 654; see, also, 4 Williston, Contracts [3d ed., 1961], § 634, p. 1021; 3 Corbin, Contracts [1960 ed.], § 589, p. 530 et seq.), if' the condition does not contradict the express terms of such written agreement. See Fadex Foreign Trading Corp. v. Grown Steel Gorp., 297 N. Y. 903, affg. 272 App. Div. 273, 274-276; see, also, Restatement, Contracts, § 241.) A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only of those which in a real sense contradict the terms of the written agreement.”
Also, in Buszozak v. Wolo (125 Misc. 546, 550), the court said ‘ whether or not there was either a delivery or acceptance may be shown by oral testimony ”,
*257 The intention of the attorneys for the parties was clear that formal delivery and acceptance must await Mr. Farrell’s last act of examining the redated abstract and then recording the transfer.
Therefore, I hold that plaintiffs were the owners of the property at the time of the fire and are entitled to judgment in the amount of $5,141.24 on their first cause of action against .¿Etna, together with interest from January 15, 1971.
The Community Savings Bank of Rochester is entitled to judgment on its cross claim against ¿Etna in the amount of $15,358.76, together with interest from January 15, 1971.
•Plaintiffs’ alternative cause of action against the Arcieris is dismissed, and .¿Etna’s cross claim against the Arcieris is dismissed.