Daniel E. Macken, J.
This action is brought by plaintiff to impress a trust upon two parcels of real property, one located in the Town of Gates, New York and the other on Sodus Bay, Town of Wolcott, New York, and to require the defendant to reconvey to plaintiff an undivided one-half interest in each of said parcels.
The parties to this action were married in 1940 and are the parents of three sons. As tenants by the entirety they held the properties which are the subject of this action. In the latter part of August, 1958 plaintiff left her husband and home and went to Las Vegas, Nevada. On November 28, 1958 the marriage between the parties was dissolved by a decree of the Eighth Judicial District Court of the State of Nevada, by which decree it was adjudicated that since their marrige the defendant had treated the plaintiff with extreme cruelty, without cause therefor, causing great physical and mental suffering and impairment of plaintiff’s health. It being conceded by counsel that both parties have since remarried, the validity of this decree cannot be questioned in this proceeding and we are obliged to accord it full faith and credit.
Upon arriving at Las Vegas the plaintiff retained the services of one William J. Hatton, an attorney, for the purpose of obtaining a divorce. By letter dated September 11,1958 Hatton wrote to the defendant and requested him to execute and return a document authorizing Morse, Graves & Compton, attorneys of Las Vegas, to appear for him in the plaintiff’s contemplated divorce action. The defendant thereupon consulted Norman T. Lyon, an attorney, who by letter dated September 24, 1958 informed Hatton that “ after extended consultation with Mr. Cansdale, it seems that he is unwilling to appear generally in any divorce action instituted by his wife unless all property and other concerns between them are fully and finally disposed of in connection with or collateral to the action ’ ’. With the letter he enclosed (1) an agreement between the parties requiring Mrs. Cansdale to relinquish her interest in their jointly owned real estate and personalty; relieving the defendant of any liability for alimony, counsel fees or other expense in connection with the proposed action, and awarding complete custody of the children to the defendant; (2) quitclaim deeds to both of the parcels of real estate hereinbefore referred to; and (3) a bill of sale to the defendant of all furnishings and personal property of every kind located at either of the parcels of real property or used in their operation or enjoyment. He requested that these papers when properly executed by the *238 plaintiff, be “ forwarded in escrow” to Leo D. Mahoney, an attorney at Rochester, and informed Hatton that when the executed papers were received, two executed copies of the agreement and the executed authoriaztion of appearance would be promptly sent to Morse, Graves and Compton.
By letter dated October 2, 1958 Hatton acknowledged receipt of Lyon’s letter and pointed out that he felt that the agreement as submitted by Lyons did not recite a proper consideration and that he had accordingly revised the agreement to include a provision for the return to plaintiff of her clothing and personal effects. He also enclosed a further appearance form providing for the incorporation of the agreement in the divorce decree.
By letter dated October 3, 1958 Hatton sent Mahoney in escrow executed copies of the agreement, authorization of appearance to be signed by the defendant, and the deeds and bill of sale, previously referred to, executed by the plaintiff. He requested Mahoney to return the original and one executed copy of the agreement together with the appearance authorization and stated: “ As soon as this matter is completed, we will return a certified copy of the Decree of Divorce for Mr. Cansdale. I believe this will complete the matter.”
By letter dated October 25, 1958 Lyon wrote to Hatton as follows:
‘ ‘ The agreement as revised by you qualifies merely as a separation agreement and offers no protection to Mr. Cansdale, save as to the material factors involved, unless and until Mrs. Cansdale elects to institute divorce proceedings.
“It is my suggestion, therefore, that further negotiation regarding the agreement be held in abeyance until your client commences action, if that is still her purpose. The fact of such action can then be recited in their agreement, which from our viewpoint is essential before Mr. Cansdale brings himself into the matter * * *
“ I have approved the agreement in all respects except those covered herein. All papers forwarded by you continue to be held in escrow. ’ ’
This letter apparently crossed in the mail a letter also dated October 25, 1958, addressed by Hatton to both Lyon and Mahoney, inquiring as to the delay in the matter and stating “May the terms of the escrow be completed now? If it is not possible for any reason to carry out the terms of the escrow, for your protection and mine may the papers we sent you be now returned to me? ”
On or about November 5, 1958 the defendant was served in Rochester with a summons and complaint in an action brought *239 by plaintiff for a divorce in the Eighth Judicial District Court in the State of Nevada.
By letter dated November 18,1958 Lyon sent Hatton a further proposed agreement amended to recite the commencement of the divorce action and executed by the defendant. He requested that the plaintiff execute and return one copy. Lyon further stated in this letter: ‘' My client informs me that he will not contest the plaintiff’s action, and is agreeable to entering a general appearance therein through a Nevada attorney. The retainer stipulation now at hand, however, does not fit the existing situation in which action has been filed; therefore please forward the proper form, or advise me how to proceed from this point. ’ ’
I find that the plaintiff executed the agreement enclosed with the foregoing letter and that thereafter Hatton pursuant to her instruction cut her signature from the agreement.
By letter dated December 2, 1958 Hatton wrote to Lyon as follows:
“Enclosed is present Decree of Divorce in the Cansdale matter.
‘£ All you have requested can still be accomplished. If you had returned to me the authorization for the entry of his appearance, on the conditions written in (or such other conditions as you see fit) we could have included in the decree compliance with those conditions, ratification of the agreement, and the return of the insurance assignment to you. We did not do that because without the authorization signed by him we could not do it,
“It can still be done. Just send me the enclosed authorization signed and acknowledged by him and we will have a modified decree issued accordingly.
“ If there is anything I have failed to make clear, please forgive me and let me clear it up for you. I sincerely believe this will get you everything you have indicated an interest in. And there is plenty of time for full deliberation.”
In response to the foregoing letter Lyon wrote to Hatton under date of December 10, 1958,
‘ ‘ Receipt is acknowledged of your letter of December 2, 1958, with enclosure.
“ As I intended to make clear in my letter of November 18, 1958, there was no purpose on the part of my client or myself to withhold forwarding the authorization for entry of appearance referred to in your letter. It was — and still is — my feeling that, since by that time your client had already filed her com *240 plaint, the words ‘ contemplates filing an action for divorce ’, etc. no longer had any logical application. I assumed you would then send me for my client’s signature another or revised form which would recite the fact that the action was already pending.
“ However, I have procured execution of the form enclosed in your letter of December 2, and simultaneously herewith am mailing same to Morse, Graves & Compton, although I think the suggested revision ought to bo made before the paper becomes a part of your Court records.
“It is understood that you will, in due course, forward to me the modified decree, incorporating a signed copy of the agreement between the parties, together Avith the insurance assignment.”
On the same date, December 10, 1958, the authorization of appearance was mailed by Lyon to Morse, Graves & Compton.
Under date of February 25, 1959 Lyon wrote to Hatton as follows:
“Please refer to my letter of December 10, 1958 regarding the above matter. It would seem that this affair should be concluded by this time with the entry of the modification decree referred to in your letter of December 2, 1958.
“ The papers heretofore signed by your client are still in escrow, and my client is anxious to complete his part of the agreement by delivering Mrs. Cansdale’s clothing and effects as arranged, and filing the aforesaid documents. We are also desirous of obtaining the signed insurance assignment previously forwarded to you.
“ Please advise me the present status of the case.”
Under date of May 2, 1959 Lyon wrote to Morse, Graves & Compton as follows:
‘1 On December 10, 1958 your firm was authorized to enter appearance in the above entitled matrimonial action on behalf of my client William M. Cansdale, the Defendant therein. This authorization followed and was the result of various negotiations between myself and William J. Hatton, Esq., of your city, attorney for the Plaintiff, which negotiations involved the execution of deeds and bill of sale by Mrs. Cansdale and the signing of an agreement by both parties regarding property settlements. These signed agreements are held in escrow by Mr. Leo J. Mahoney, Rochester attorney, pending receipt of a modified decree embodying said agreement, which was promised to us by Mr. Hatton.
“ The modified decree has not been received and my letter of February 25,1959 to Mr. Hatton (of which you have a copy) has remained unanswered.
*241 ‘ ‘ I cannot understand why this matter has been allowed to remain unresolved over so long a period of time, and believe steps should be taken to dispose of it, so that escrow restrictions on the aforesaid documents may be lifted and the same properly filed.
‘ ‘ However, before proceeding further, I am writing to you as the Defendant’s attorney of record in the Nevada jurisdiction, with the request that you investigate and advise me the status of the case at the present time.”
Under date of May 4, 1959 Hatton wrote to Lyon the following:
‘11 return to you herewith all the documents sent me bearing signature of William M. Cansdale.
‘ ‘ William M. Cansdale simply crowded it too hard. He took advantage of the situation to such an extent that Phyllis refused to go further for him. The terms of the proposed agreement were harsh with a vengeance. The straw that broke the camel’s back was when he let a bill for a mere $15.00 be sent here for collection from her. The attitude shown thereby seemed to her to confirm her understanding that he had already given away to others some of the items she was expected to believe would be returned to her under the terms of the purported agreement.
“ The agreement in its present form is of questioname validity, anyway; an effectively monetary consideration is clearly stated as a purchase price for his appearance. Although agreements of compromise are favored, the purchase of consent to a decree could be questioned.
‘ ‘ Had Cansdale not crowded it too hard, we could undoubtedly have cleared this up.
“ The paper authorizing Morse, Graves & Compton to appear for him, subject to conditions therein set forth, was sent by you to Morse, Graves & Compton. It has never been used for any purpose. It could not be used at all, unless Phyllis complied with the terms therein set forth, which she had not done for the reasons stated.”
It is agreed by the parties that the foregoing constitutes all of the correspondence between Hatton, Lyon, Mahoney, and Morse, Graves & Compton, or any of them, with reference to this matter.
I find that after receipt of Hatton’s letter of May 4 and during the month of May, 1959, Lyon went to Mahoney’s office, told him that the conditions of the escrow had been fulfilled and received from Mahoney the papers held by him including the deeds to the two parcels of property involved in this action. *242 Mahoney has testified that at the time of delivering the escrowed papers to Lyon, he was not aware that Hatton hy his letter of May 4 had repudiated or attempted to repudiate the transaction. Lyon, however, testified that he at the time informed Mahoney of the contents of Hatton’s letter. I do not find it necessary to resolve this dispute of fact as I find that the defendant is bound by the testimony of Lyon that Mahoney was made aware of the contents of Patton’s letter of May 4.
I further find that the deed to the Wolcott property was recorded in Wayne County Clerk’s office July 9, 1959 and the deed to the Gates’ property in the Monroe County Clerk’s office on July 10, 1959, and that at no time did the defendant or anyone on his hehalf inform the plaintiff or anyone on her behalf that the deeds had been delivered and recorded.
As I see it, the questions presented are: (1) did the parties enter into a valid contract, and (2) did the defendant so comply with the contract as to entitle him to delivery of the deeds.
The plaintiff having secured a decree of divorce and the defendant’s appearance being sought by her not having been furnished, it may well be that at that time plaintiff might have terminated the negotiations and demanded the return of her escrowed papers. Her attorney, however, in his letter enclosing a copy of the divorce decree again invited the defendant to appear in the action and proposed that the decree be modified to note such appearance. Implicit in this request was an agreement that the plaintiff would perform the conditions previously agreed to by her. The defendant promptly acceded to this suggestion, mailed the authorization to the attorneys designated by plaintiff to appear for him, and informed Hatton that he had done so. From that time, December 10, 1958, until Hatton’s letter of May 4, 1959, neither defendant nor his attorney received any communication from the plaintiff or anyone acting on her behalf.
It is contended by the plaintiff that the mailing of the authorization to Morse, Graves & Compton rather than to “me” (Hatton) as requested in Hatton’s letter of December 2, 1958, was not sufficient compliance with the terms of the escrow. I conclude, however, that the mailing of the authorization to Morse, Graves & Compton was sufficient compliance by defendant and was acquiesced in by Hatton’s failure to object thereto although notified that the authoriaztion had been so mailed. While it is true that plaintiff has not delivered the executed agreement, the agreement was entirely for the benefit of the *243 defendant and plaintiff may not complain of defendant’s waiver of her compliance in that respect.
It is urged by plaintiff that Hatton’s proposal to accept the authorization of appearance after the entry of the decree was entirely without her authorization, express or implied. She contends that Hatton’s authority to act for her ceased upon the entry of the decree. It is not questioned, nor could it be, that at the time of the inception of negotiations and continuing until the entry of the decree Hatton was empowered to act for the plaintiff. His retainer obviously went beyond the legal formalities attendant upon obtaining the decree. At the time the decree was entered plaintiff’s papers were still in escrow and Hatton had a least apparent or implied authority to act for the plaintiff in concluding the matter. (Ohlquist v. Nordstrom, 143 Misc. 502.)
I therefore conclude that if the agreement is in other respects valid, the defendant has performed his part of it and was entitled to delivery of the deeds in question.
I have serious doubts, however, as to the presence or, if present, the legality of consideration to support the agreement by the terms of which defendant claims to have been entitled to delivery of the deeds.
The only elements of this transaction which might be considered at all beneficial to the plaintiff or of detriment to the defendant are the defendant’s agreement to surrender the clothing and personal belongings of the plaintiff and his execution and mailing of the appearance after the entry of the divorce decree.
In my view, neither of these elements constituted consideration.
If there was ever any doubt as to plaintiff’s right to her own clothing and personal belongings, it was resolved by the findings in the divorce decree. (Plohn v. Plohn, 1 A D 2d 824.) Neither the promise to do a thing, nor the actual doing of it, will be a good consideration if it is a thing which the party is bound to do by the general law, or by a subsisting contract with the other party. (Vanderbilt v. Schreyer, 91 N. Y. 392, 401; Schram v. Cotton, 281 N. Y. 499, 507; 269 Canal St. Corp. v. Zurich Gen. Acc. & Liab. Ins. Co., 226 App. Div. 516, 519, affd. 252 N. Y. 603; Melnick v. Kukla, 228 App. Div. 321, 324.)
While in the initial stages of negotiations the parties contemplated the appearance by the defendant in a pending or about to be commenced action, defendant’s compliance with *244 which, leaving aside any question of illegality, might have constituted consideration sufficient to support the agreement, the performance upon which the defendant must now rely was the furnishing of his appearance after the entry of the decree of divorce. By reason of his subsequent remarriage the defendant may not in this proceeding question the validity of the divorce decree. (Carbulon v. Carbulon, 293 N. Y. 375; Matter of Bingham, 265 App. Div. 463; Restatement, Conflict of Laws, § 112.) By his subsequent remarriage the defendant did not validate an invalid or doubtful decree. Rather he thereby conceded that the decree when entered was valid. Under these circumstances his execution and mailing of the appearance were of no greater legal significance than had he by agreement signed and delivered a blank piece of paper for incorporation in the decree. While the law does not weigh the quantum of consideration and whether or not the consideration is adequate to the promise is generally immaterial, the consideration must be “ something of real value in the eye of the law ”. (Mencher v. Weiss, 306 N. Y. 1, 8.) “There is discernible a trend in a number of jurisdictions to inquire into the reality or sufficiency * * * of the consideration, but not into its adequacy. Thus, the surrender of a worthless paper, having no present or potential intrinsic value, is not deemed consideration ’ \ (1 Williston, Contracts [3d ed.], p. 456, n. 14.)
Notwithstanding the absence of consideration to support the agreement, had the plaintiff voluntarily delivered the deeds in question to the defendant, she could not now be heard to say that the conveyances thereby effected were without consideration. (Clark, New York Law of Contracts, § 233; Hammerstein v. Equitable Trust Co., 209 N. Y. 429.) She did not, however, deliver the deeds. They were delivered by Mahoney, the escrowee, after the plaintiff by Hatton’s letter of May 4 had repudiated the agreement and which defendant concedes was brought to Mahoney’s attention. Even though no consideration ran to the plaintiff, had there been a detriment to the defendant, he probably would have been entitled to delivery of the deeds. (Mechanics’ Nat. Bank v. Jones, 76 App. Div. 534, affd. 175 N. Y. 518.) In the absence of consideration to the plaintiff or detriment to the defendant, should Mahoney have elected to retain the deeds in escrow pending direction by a court, this court could and would have directed that the deeds be returned to the plaintiff. (Schonceit v. Springer, 103 N. Y. S. 2d 691; Buchhalter v. Rude, 54 F. 2d 834; Judson v. Buckley, 130 F. 2d 174.) Plaintiff should not be deprived of relief to *245 which she would otherwise be entitled because Mahoney chose to deliver the deeds to the defendant. I cannot believe an escrowee has any such discretionary power to summarily determine substantial rights of those who have entrusted him with custody of their writings.
While neither party by pleading has questioned the legality of the alleged contract, if the contract is illegal the court is bound to raise the issue in the interest of due administration of justice. (Oscanyan v. Arms Co., 103 U. S. 261, 267.)
Our courts have held that a support agreement made after the entry of a foreign divorce decree will not be denied enforcement because in connection with the making of the agreement a party appeared in the foreign suit and thus gave the decree some appearance of due process which it otherwise might seem to lack. (Matter of Rhinelander, 290 N. Y. 31, 38.) Here, however, there is no agreement for support. This was no ordinary separation agreement of which one of the incidents was an agreement to appear in a foreign tribunal. This entire transaction was nothing more and nothing less than a barter and sale of defendant’s appearance for the sole purpose of hastening or validating, or both, a decree of divorce. The price exacted was plaintiff’s complete relinquishment of all of her rights and interests, tangible or intangible, arising out of her marriage to the defendant.
The agreement is contrary to the public policy of this State, in contravention of section 51 of the Domestic Relations Law, and is illegal. While ordinarily a court of equity will leave the parties to an illegal contract where it finds them, upon repudiating and disavowing the agreement plaintiff became entitled to the return of the escrowed deeds. (Schonceit v. Springer; Buchhalter v. Rude; Judson v. Buckley; supra.)
The plaintiff is entitled to a judgment with costs impressing trusts on the two described parcels of property and directing the defendant to reconvey to the plaintiff a one-half undivided interest in each said parcel. Since it would appear that the defendant has enjoyed exclusive use of the properties the plaintiff will not be required to share expense incurred by defendant to date in the maintenance of the properties nor will defendant be required to account to plaintiff for the use of or any income from the said properties to date.
Plaintiff has applied for reimbursement of expenses incurred by the alleged failure of the defendant to properly reply to notices to admit pursuant to section 322 of the Civil Practice Act. I find that the defendant’s replies to the said notices *246 were reasonably made and plaintiff’s application in this respect is denied.
This memorandum will constitute compliance with section 440 of the Civil Practice Act. Let judgment enter in accordance with this decision to be settled on notice.