**In re COBHAM ENTERPRISES, INC., d/b/a Studio 54, Debtor.**

**Bankruptcy No. 85 B 11853.**

United States Bankruptcy Court, S.D. New York.

May 14, 1986.

Kera & Graubard, by M. David Graubard, New York City, for debtor.

Goldstein, Lieberman & Peltz by Howard J. Peltz, New York City, for landlord.

Jules Teitelbaum, P.C. by Gary Ginsburg, New York City, for David M. Berdon, a trustee.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

254 West 54 Venture Company (the "Landlord") seeks an order, pursuant to § 365 of the Bankruptcy Code, 11 U.S.C. § 365 (1984), compelling the debtor to surrender its lease to it. David Berdon, trustee, a creditor having security through an escrowed assignment of the lease, opposes the motion and seeks approval of a stipulation with Cobham Enterprises, Inc. ("Cobham" or "the debtor"), seeking, *inter alia,* the surrender of the debtor's leasehold to him. In opposing the motion Berdon asserts that this Court must abstain, pursuant to 28 U.S.C. § 1334 (1984), from adjudicating the rights of the Landlord and the secured party in the leasehold. Neverthe-

less, he seeks an order of this Court delivering the lease to him.

### I.

The debtor filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 (1984) on November 12, 1985. It operated Studio 54, a night club discotheque at the premises.

254 West 54 Venture Company is the successor-in-interest to the original lessor, Jisa Associates. Cobham entered into a purchase agreement in May, 1980 with the original lessee, Broadway Catering Company ("Broadway"), whereby Broadway sold certain assets and assigned its lease to Cobham. Cobham executed a promissory note in the sum of $3,660,000, and reassigned the lease to Broadway as collateral security for payment of the note. The original landlord consented to the assignment and entered into the lease which refers to the reassignment. Nothing indicates that by giving its consent there was a waiver of its rights to performance under the lease. The lease, the assignment, and the reassignment were not recorded. Broadway and Cobham entered into a security agreement, and a U.C.C. financing statement indicating that Broadway had a security interest in "[a]ll fixed assets of the Debtor located at Debtor's Studio 54 discotheque, 254 West 54th Street, New York, New York," was executed and duly recorded.

In accordance with a certain Administration and Foreclosure Trustee Agreement entered into in 1981 between Broadway, the Internal Revenue Service and the New York State Department of Taxation and Finance, Berdon was appointed as a Trustee to receive the payments due from Cobham to Broadway. Pursuant thereto, Berdon is authorized to resort to any remedy available to Broadway.

The reassignment was held in escrow pursuant to an escrow agreement entered into between Broadway, the Debtor, and the escrow agent. That agreement required the escrow agent, if Cobham defaulted on any of its obligations under the

Purchase Agreement and did not cure the default within a certain time, to deliver the reassignment to the seller. By its terms, it provides that such delivery will be determinative as to Broadway's rights to possess and occupy the premises. The reassignment remained in escrow in the possession of the escrow agent, and was not delivered to Berdon although allegedly demanded.

The Lease contains a clause requiring the debtor to maintain certain levels of insurance coverage, including fire insurance of $700,000 and "Public Liability Insurance $3,000,000.00/$5,000,000.00." By September, 1985, Cobham had failed to provide at least the public liability insurance coverage required by the lease and to make payment on the notes due under the Purchase Agreement. The Landlord, in accordance with the lease, thereupon served a notice to cure and notice of termination upon Cobham and upon Broadway pursuant to the doctrine expressed in *First National Stores v. Yellowstone Shopping Center*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968). Prior to the expiration of the period in which it could cure, Cobham brought an action in the New York Supreme Court seeking a preliminary and final injunction barring the termination of the lease and a declaration that it was not in default. It obtained an *ex parte* temporary restraining order that stayed the effect of the landlord's notice and tolled the cure period. It then filed its petition in bankruptcy.

The Landlord brought on a motion in this Court seeking relief from the automatic stay pursuant to §§ 362(d) and 105 of the Bankruptcy Code. It sought to declare the debtor in default of the lease and to direct it to cure the defaults. More pertinent to this proceeding, it demanded, pursuant to § 365, that the debtor vacate the premises and surrender them to the Landlord if the defaults were not cured, and alternatively sought a preliminary injunction requiring the debtor to close its business to the public until they were cured.

At the hearing regarding the motion for a preliminary injunction, it was undisputed that the debtor had not maintained the public liability insurance coverage required by the lease. Upon the debtor producing a binder from Alexander & Alexander of New York, Inc., insurance agents, providing general liability insurance coverage with a $1,000,000 combined single limit of liability, and excluding liquor law liability, and evidence that it was attempting to obtain full coverage, the motion was denied. The Court, following *Poe v. Michael Todd Company, Inc.*, 151 F.Supp. 801 (S.D.N.Y. 1957) ruled that the delay in seeking the relief, when coupled with the presence of the binder, indicated that the injury claimed by the Landlord was not irreparable and ordered that an expedited trial be held.

That trial was repeatedly adjourned at the request of the parties. The time for the debtor to assume or reject the lease pursuant to § 365(d)(4) of the Bankruptcy Code was also extended. During the interim, the debtor continued to seek to obtain the public liability insurance coverage required by the lease. It ultimately failed to do so for reasons unrelated to its having entered bankruptcy. On April 7, 1986, this Court ordered the debtor to close its doors for failing to comply with the terms of the lease as required by § 365(d)(3) of the Code. In so ruling, the Court was of the opinion that although Congress did not codify a remedy for violation of § 365(d)(3), the Landlord, the public and other creditors should not bear the risk of the underinsured premises. *Cf. Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

At the hearing held on April 7, the Court also extended the time for the debtor to assume or reject the lease to April 16, 1986. Assumption was conditioned upon the acquisition of satisfactory insurance coverage to meet the requirements of the lease, the delivery of an insurance binder to the Landlord's attorney, and the payment of one month's rent by April 11, 1986. By April 16, 1986, none of these conditions had been satisfied. The Court denied a motion by certain creditors to extend the time for the debtor to assume or reject the lease

because there was no showing of the requisite cause upon which to base such an extension.

The stipulation for which approval is sought provides, in pertinent part, that the parties agree that the debtor shall surrender its possession of the premises and fixtures and consents to the delivery to Berdon of the reassignment of the lease to Broadway, thereby relinquishing any claim the debtor may have in and to the premises. The debtor would consent to a modification of the automatic stay in order to effectuate these provisions. The stipulation recites that the debtor owed $2,210,-593.90 on the notes at the time the petition was filed, that it had not made any post-petition payment to reduce that amount, and that post-petition arrears total $244,200.

## II.

■ Overhanging both the Landlord's and the secured creditor's motions is the automatic rejection provision of § 365(d)(4). That section provides:

> ... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4) (1984). In requiring the debtor to take action to assume or reject the lease within a fixed time period, whether it be the 60-day period or an extended period as fixed by the Court under the compulsion of a deemed rejection, it cannot be denied that Congress specifically intended to remedy the problems associated with extended vacancies which had plagued landlords whose tenants filed for bankruptcy. 130 Cong.Rec. S8894–95 (daily ed. June 29, 1984). But it equally cannot be denied that there is no indication that Congress, in decreeing that a leasehold be surrendered to the lessor, gave any thought to thereby overriding the interests of a creditor holding a security interest in a lease by way of an assignment held in escrow.

There can be but little doubt that the arrangement presented here, so typical of sales of restaurants in New York, constitutes a security agreement and thus that Berdon is to be viewed as a potentially secured creditor rather than an assignee. *See In re Winston Mills, Inc.,* 6 B.R. 587, 2 C.B.C.2d 1267 (Bankr.S.D.N.Y.1980). Indeed, he has so styled himself throughout this proceeding, urging, *inter alia,* that the debtor's time to assume the lease under § 365(d)(4) be extended. Were he, upon the debtor's default in its obligations to him, to be viewed as an assignee, the debtor would seemingly have no lease to assume.

But as a secured creditor, his interest in the collateral is necessarily subject to all its deficiencies. Principal among these is that the debtor has defaulted on the lease in two material respects: it failed to pay prepetition rent in accordance with the terms of the lease and has failed, both pre- and post-petition, to maintain the insurance coverage required by the lease.

Berdon argues nevertheless that the lease should be transferred to him. He asserts that he could cure the pre-petition rental default and that the insurance provision is inapplicable since he will padlock the premises and sell the lease. Neither of these contentions has any merit even if Berdon were viewed as an assignee rather than a secured creditor.

As to the curing of pre-petition defaults, the assignment clothes him with no such power and Berdon cites no state law authority giving him such power. It is undisputed that the Bankruptcy Code grants no such power. While defaults might be cured by a debtor-in-possession pursuant to a plan of reorganization, as provided in § 1123(a)(5)(G), here there is no plan and Berdon is not the debtor-in-possession. Similarly, although § 365(b)(1)[1] enables a

---

1. Section 365(b)(1) of the Code provides:

If there has been a default in an executory

trustee or debtor-in-possession to cure defaults in an unexpired lease, that power may be exercised only upon the assumption of the lease. The power belongs to the trustee or debtor-in-possession. Whether the stipulation that Berdon and Cobham seek to have approved might constitute an assumption, we need not so decide. The stipulation makes no provision, as § 365(b)(1) requires, for cure of the defaults and there is no evidence of any adequate assurance that Cobham pursuant to § 365(b)(1), or Berdon as assignee pursuant to § 365(f)(2),[2] *see In re Evelyn Byrnes, Inc.*, 32 B.R. 825, 828–30, 9 C.B.C.2d 430 (Bankr.S.D.N.Y.1983); *In re Fifth Avenue Originals*, 32 B.R. 648, 652–53 (Bankr.S.D.N.Y.1983), will perform the tenant's obligations under the lease.

In fact, with respect to the public liability insurance provision of the lease, the evidence on the record of the numerous hearings held is that there will be no such performance. It is Cobham's failure, despite numerous attempts to obtain such coverage, that lead to its demise. As to Berdon, he has submitted nothing to indicate that he has such insurance. Even were it to be found that the consent by the Landlord's predecessor to the assignment was given with the knowledge that Berdon would further assign the lease to another entity, there is no indication that that entity, whose identity is unknown, has such insurance. While Berdon might padlock the door, the insurance provision is not conditioned upon the actual use of the premises.

We thus conclude that with the expiration of the debtor's time to assume the lease, the lease is deemed to be rejected as § 365(d)(4) provides and, since the lease is in default and it cannot be cured by Berdon, the premises are to be surrendered to the Landlord.

### III.

■ Berdon's request that this Court abstain is also without merit. Mandatory abstention, as set forth in 28 U.S.C. 1334(c)(2) (1984) is inapplicable. This proceeding, as indicated by the above discussion, involves federal law and Berdon has not cited a single provision of state law or a single authority under state law that would entitle him to relief. Secondly, no state law proceeding between Berdon and the Landlord concerning the assignment has been brought to our attention. Instead, Berdon has pressed his position here.

Discretionary abstention under 28 U.S.C. § 1334(c)(1) is also inapplicable. None of the recognized exceptions[3] to a federal court's "unflagging duty to exercise its jurisdiction," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), apply here. This is a proceeding involving the disposition of a leasehold that is property of this estate. Disposition of property is at the heart of

contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

**2.** Section 365(f)(2) of the Code provides:

The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

**3.** *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976); *Thompson v. Magnolia Petroleum Company*, 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); *In re Martin-Trigona*, 35 B.R. 596, 599 (Bankr.S.D.N.Y.1983); 1 *Collier on Bankruptcy* ¶ 3.01 (15th ed. 1985).

the bankruptcy power. To abstain would be to subvert Congressional exercise of that power.

For the foregoing reason, Berdon's motion seeking approval of the stipulation between it and the debtor must be, and hereby is, denied and the debtor ordered to surrender the premises described in the lease to the Landlord. It is

SO ORDERED.