**In re COBHAM ENTERPRISES, INC. d/b/a Studio 54, Debtor,**

**David D. BERDON, as Trustee, Appellant,**

v.

**254 WEST 54 VENTURE COMPANY, Appellee.**

**No. 86 Civ. 5374 (JMW).**

United States District Court, S.D. New York.

April 15, 1987.

Jules Teitelbaum, New York City, for appellant.

Howard T. Peltz, Robert Mark Wasko of the firm Epstein, Reiss & Goodman, New York City, for appellee.

## OPINION

WALKER, District Judge:

### INTRODUCTION

Appellant creditor David D. Berdon, as Trustee for a group including Debtor's transferor, ("Berdon") appeals from an Order of the Honorable Howard C. Buschman III, Bankruptcy Judge. The Order denied Berdon's motion for approval of a Stipulation in which Cobham Enterprises, Inc. ("Debtor" or "Cobham") agreed to surrender possession of leased premises located at 254 West 54th Street, New York, New York, to Berdon. The Order further direct-

ed Cobham to surrender possession of the premises to Appellee 254 West 54 Venture Company ("Landlord"), pursuant to 11 U.S.C. § 365(d)(4) (Supp.1986), 62 B.R. 191 (Bankr.S.D.N.Y.1986).

For the reasons stated below, Judge Buschman's Order is affirmed.

## FACTS

The lease that is the subject of this appeal was originally held by Broadway Catering Company ("Broadway"). It is for premises located at 254 West 54th Street, New York, New York.

In May 1981 Broadway entered an agreement to assign the lease and sell certain of its assets to Cobham. As consideration, Cobham executed a promissory note for the sum of $3,660,000 and as collateral security for payment Cobham reassigned the lease to Broadway. Pursuant to an escrow agreement between Broadway, Cobham and an Escrow Agent, dated May 1, 1980 Cobham delivered the lease reassignment to the Escrow Agent. The original landlord to the premises, Jisa Associates, consented to the assignment of the lease and entered into the new lease which referred to the lease reassignment. The lease, assignment and reassignment were never recorded. Broadway and Cobham also entered into a security agreement giving Broadway a security interest in "[a]ll fixed assets of the Debtor located at Debtor's Studio 54 Discotheque, 254 West 54th Street, New York, New York." This Security Agreement was executed and recorded.

In 1981, under an Administration and Foreclosure Trustee Agreement entered into by Broadway, the Internal Revenue Service, and the New York State Department of Taxation and Finance, Appellant David D. Berdon was appointed Trustee for Broadway to collect payments from Cobham. Under the Agreement Berdon is authorized to resort to any remedies available to Broadway.

In early 1985, Cobham defaulted on its payments to Berdon under the terms of the promissory note. On July 15, 1985, Berdon allegedly made a demand upon the Escrow Agent for the lease reassignment. The Escrow Agent, however, never physically delivered the reassignment to Berdon.

In September 1985, the Landlord (successor in interest to Jisa Associates) served Cobham and Berdon with a Notice to Cure and Notice of Termination. The Landlord claimed that Cobham had failed to comply with the insurance coverage provision of the lease which required Cobham to maintain $3,000,000/$5,000,000 public liability insurance on the leased property. Prior to the expiration of the period within which it could cure the default, Cobham brought an action in the Supreme Court of the State of New York, New York County, for a preliminary and final injunction against termination of the lease and a declaration that Cobham was not in default of the lease. The court granted Cobham an *ex parte* temporary restraining order which stayed the effect of the Landlord's Notice and tolled the time within which Cobham could cure its defaults.

On November 12, 1985, Cobham filed a petition with the Bankruptcy Court, Southern District of New York, pursuant to 11 U.S.C. § 1101, which entitled it to the protection of the automatic stay of § 362(a).

On or about December 27, 1985, the Landlord filed a motion under § 362(d) and § 105 seeking relief from the automatic stay. The Landlord requested the Bankruptcy Court to (1) declare Debtor in default of the lease, (2) direct Debtor to cure the default within a reasonable time, and (3) compel Debtor to vacate and surrender the premises to the Landlord if the defaults were not cured. As an alternative, the Landlord sought a preliminary injunction compelling Cobham to close its business to the public until the defaults were cured.

On January 10, 1986, the Bankruptcy Court held a hearing on the motion for the preliminary injunction. The court denied the motion since the landlord could not show irreparable harm and ordered an expedited trial. The trial, however, was adjourned numerous times at the request of the parties. Pursuant to § 365(d)(4), the Bankruptcy Court also extended the time

for Debtor to assume or reject the lease.[1] During this time Cobham attempted to obtain the required insurance, but was unsuccessful.

On April 7, 1986, the Bankruptcy Court ordered Cobham to close its doors to the public because Cobham had failed to fulfill its obligations as lessee. The court extended the time for Cobham to assume or reject the lease to April 16, 1986. Assumption of the lease, however, was conditioned upon acquisition of insurance, delivery of an insurance binder to Landlord's attorney and the payment of one month's rent by April 11, 1986.

On April 11, 1986, Berdon moved by Order to Show Cause for approval of a Stipulation entered into between Cobham and Berdon. Under the terms of the Stipulation Cobham agreed to surrender possession of the leased premises and fixtures and to deliver the lease reassignment to Berdon. The Stipulation stated that the debtor owed $2,210,594 on the promissory note at the time the petition was filed and that post-petition payment arrears totalled $244,200.

As of April 16, 1986, Debtor Cobham had obtained no insurance and paid no rent to the Landlord and, therefore, was unable to assume the lease. The Bankruptcy Court refused Cobham's request for yet another extension of time to assume or reject the lease. Accordingly, by Decision and Order dated May 14, 1986, that court determined that Cobham's lease was "deemed rejected" pursuant to 11 U.S.C. § 365(d)(4) on the grounds that the lease was in default and could not be cured and directed Cobham to surrender the leased premises to the Landlord. Berdon's motion seeking approval of the Stipulation was denied. These are the orders from which this appeal is taken.

## DISCUSSION

Berdon argues that he owned the lease prior to the filing of Cobham's petition under Chapter 11 and, therefore, it is not property of the estate. He claims that title

to the lease passed to him on July 15, 1985 pursuant to the terms of the Escrow Agreement when he demanded the lease reassignment from the Escrow Agent. Alternatively, he argues that he obtained legal title to the lease upon the execution of the Security Agreement.

The Bankruptcy Court accurately described the legal relationship between Berdon and Cobham, stating "[t]here can be but little doubt that the arrangement presented here, so typical of sales of restaurants in New York, constitutes a security agreement and thus that Berdon is to be viewed as a potentially secured creditor rather than an assignee." *In re Cobham Enterprises, Inc.*, 62 B.R. 191, 194 (Bankr. S.D.N.Y.1986). The Purchase and Escrow Agreements, viewed in context of the entire transaction, indicate that the parties intended to enter a security agreement, not an assignment, when they executed the lease reassignment and placed it in escrow. *See In re 48th Street Steakhouse, Inc.*, 61 B.R. 182, 190 (Bankr.S.D.N.Y.1986). Berdon, indeed, does not dispute this.

Berdon claims, however, that his interest in the lease changed on July 15, 1985 when he demanded the lease reassignment from the Escrow Agent following Cobham's default on payments against the promissory note. He contends that by virtue of the doctrine of "deemed delivery" he obtained title to the lease at that time and now stands in the position of an assignee rather than a secured creditor.

Under New York law ownership of escrowed property, such as the lease reassignment at issue here, remains with the party depositing the property into escrow until the conditions of the escrow agreement are fulfilled. *Press v. Marvalan Industries, Inc.*, 422 F.Supp. 346, 349 (S.D.N.Y.1976); *Alexander v. Quality Leather Goods Corp.*, 150 Misc. 577, 580, 269 N.Y.S. 499, 502 (Sup.Ct.1934). In this case, the Escrow Agreement conditioned transfer of title of the lease reassignment upon default by the Debtor and delivery to the

---

1. Under 11 U.S.C. § 365 (Supp.1986) the trustee in bankruptcy or the debtor in possession may "assume" the lease and continue to exercise con-

trol over the leasehold estate or "reject" it and surrender the leased premises to the landlord. 11 U.S.C. §§ 365, 1107 (Supp.1986).

Seller.[2] Landlord interprets this condition to mean that the lease reassignment must be physically delivered to Berdon to effect transfer of title, whereas Berdon argues that actual physical delivery is not necessary.

The doctrine of "deemed delivery" does not apply under the circumstances presented here. In *In re Ellison Associates*, 63 B.R. 756, 763 (S.D.N.Y.1983) this Court held that under New York law physical delivery of escrowed property is ordinarily required to transfer title. "What is more, the concept of 'deemed delivery' ... as a means of getting around the requirement for actual physical delivery is a protection against wrongful conduct on the part of an escrowee towards his fiduciaries." *Id; See Rapp v. Cansdale*, 29 Misc.2d 236, 245, 214 N.Y.S.2d 522, 532 (1960), *aff'd*, 12 A.D.2d 884, 211 N.Y.S.2d 1002 (4th Dep't 1961). Accordingly, in the absence of wrongful conduct by the Escrow Agent, there must be physical delivery of the escrowed property to effect transfer of title.[3] *In re Ellison*, 63 B.R. at 763.

In this case Berdon has not alleged that the Escrow Agent wrongfully withheld the lease reassignment. Nor has he alleged facts from which the Court might reasonably infer that a wrongful withholding occurred. Therefore the doctrine of "deemed delivery" is inapplicable and title to the lease remains with the debtor.

■ Berdon also argues that "legal title" to the lease passed to him upon the execution of the Security Agreement and, therefore, he owned the lease prior to the filing of the petition. This position is meritless. Regardless of whether or not "legal title" to the lease somehow passed to Berdon upon the execution of the security

agreement, Cobham retained at least an equitable interest in the leasehold. This equitable interest became part of the bankrupt's estate and was properly subject to the order of the Bankruptcy Court. 11 U.S.C. § 541(a) (estate includes "all legal *or equitable interests* of debtor in property as of the commencement of the case.") (emphasis added); *In re 48th Street Steakhouse, Inc.*, 61 B.R. 182 (Bankr.S.D.N.Y. 1986) ("By virtue of section 541, which is meant to be read broadly, the commencement of a case creates an estate comprising all the debtor's legal and equitable interests."); *See also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

■ Since the lease became part of the bankrupt's estate when the bankruptcy petition was filed, Cobham's ability to assign it was contingent upon his assumption of it pursuant § 365(b) and upon adequate assurance of the assignee's future performance. 11 U.S.C. § 365(f)(2); *See In re Fifth Avenue Originals*, 32 B.R. 648 (Bankr.S.D.N.Y.1983). Section 365(b)(1) provides that a Trustee in bankruptcy (or debtor-in-possession)[4] may only assume a lease upon which a debtor has defaulted if the Trustee (or debtor-in-possession), at the time of the assumption of the lease

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

---

2. The Escrow agreement states:
... In the event of a default by the Purchaser in the performance of any of its obligations under the Purchase Agreement which has not been cured within the permissible time period, the Escrow Agent shall deliver the Reassignment of the lease to the Seller, which delivery shall be binding upon the Purchaser and the Seller as to Purchaser's rights to possess and occupy the premises covered by said Reassignment of lease....

3. The cases relied upon by Berdon are not to the contrary. For example, in *Alexander v. Quality Leather Goods Corp.*, 150 Misc. 577, 579, 269 N.Y.S. 499 (Sup.Ct.1934), the court held that title of a stock certificate held in escrow could pass only upon performance of the specified condition in the escrow agreement. Since the contingency to signal change in ownership never occurred, the court did not address the issue of actual versus "deemed" delivery.

4. 11 U.S.C. § 1107 (Supp.1986).

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1) (Supp.1986).

In this case the Bankruptcy Court required Cobham to obtain adequate insurance, deliver an insurance binder to the landlord and pay one month's rent in order to cure the defaults and thus assume the lease. It is undisputed that Cobham was unable to satisfy these conditions. Nor was Cobham able to render adequate assurance that it or anyone else, including Berdon, could do so in the future.

Berdon's position is merely that of a secured creditor and hence his rights to the collateral are limited by Cobham's inability to assume the lease (due to Cobham's defaults under the insurance and rental payment provisions) which is a prerequisite to its reassignment to Berdon. The Stipulation by which Cobham sought to transfer the lease to Berdon failed to provide for cure of default or assurance that it would be cured by either the Debtor or Berdon or adequate assurance that Berdon as assignee would perform tenant's obligations under the lease. 11 U.S.C. §§ 365(b)(1) and 365(f) (Supp.1986).

Since Cobham was unable to assume the lease within the period fixed by the Bankruptcy Court, the lease is deemed rejected under § 365(d)(4).

Berdon's argument that this Court has no jurisdiction to decide this case under 28 U.S.C. § 1334 is meritless. This Court has determined that the lease is property of the Debtor's estate and, therefore, the dispute is properly subject to this Court's jurisdiction under 28 U.S.C. § 1334.

### CONCLUSION

The leased property located at 254 West 54th Street, New York, New York is property of the debtor's bankruptcy estate. Since Debtor did not properly assume such lease under 11 U.S.C. § 365(d) (Supp.1986), it is deemed rejected and thus may not be assigned to the secured creditor. The Order of the Bankruptcy Court disapproving the stipulation between Cobham and Berdon purporting to effect the assignment is affirmed. The order of the Bankruptcy Court directing Cobham to surrender possession to the landlord is also affirmed.

SO ORDERED.