In re AIR ATLANTA, INC., Debtor.

HELLER FINANCIAL, INC., Movant,

v.

AIR ATLANTA, INC., Debtor in Possession, Respondent.

Bankruptcy No. A87–02530–WHD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 28, 1987.

See also, 74 B.R. 426.

Joel B. Piassick, Ronald E. Barab, Smith, Gambrell & Russell, Atlanta, Ga., for Heller Financial, Inc.

John C. Pennington, Norton, Pennington, Goetz, Cronkright & Prior, Atlanta, Ga., for Air Atlanta, Inc.

James R. Paulk, Jr., Trotter, Smith & Jacobs, Atlanta, Ga., for Atlanta Airlines Terminal Corp.

## ORDER

W.H. DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on a Motion for Relief from Stay filed by Heller Financial, Inc. ("Heller"). At the hearing on the matter on May 14, 1987, it appeared that Heller and the Debtor, Air Atlanta, Inc., were prepared to enter into a consent order granting Heller the relief it sought. Prior to the hearing, however, Atlanta Airlines Terminal Corporation ("AATC"), although it had not been named as a respondent in this matter, filed a response to Heller's motion by which AATC sought to have the

Court condition any relief granted to Heller upon the protection of AATC's rights in relation to certain collateral claimed by Heller. The Court granted Heller's motion except as to the collateral involved in AATC's pleading. The relevant facts are as follows.

On February 1, 1984, the debtor executed an Agreement and Lease (the "Lease") with the City of Atlanta, covering certain gates and rights in the Central Passenger Terminal Complex at William B. Hartsfield Atlanta International Airport ("Hartsfield"). Under Title VI of the Lease, the debtor is responsible for maintaining and operating its exclusively leased premises at the Hartsfield terminal building and for a pro rata share of all costs of maintaining and operating those common areas of the terminal shared with other airlines. The Lease provides elaborate formulas for calculating the debtor's share of maintenance and operations expenses for various areas of the terminal.

Section 6.01A(9) of the Lease provides that the debtor and all other airlines ("Contracting Airlines") which executed similar agreements with the City "may contract with a third party to provide maintenance and operations ('M & O') services or they may provide M & O services with their own personnel or in any other way so long as the Leased Premises are maintained and operated in a sound and prudent manner." An amendment to the Lease added a Section 6.01A(10) which provides that if a Contracting Airline fails to agree with the other Contracting Airlines regarding the performance and financing of its share of joint maintenance and operations obligations, then such airline's share shall be paid monthly to the City, which will credit the accounts of the other Contracting Airlines.

In order to more efficiently perform their maintenance and operations obligations, the debtor and other Contracting Airlines formed AATC to fulfill such obligations by methods to be agreed upon, such as by contracting with third parties, or with a Contracting Airline, or by performance by AATC itself. The participating airlines become stockholders in AATC. Expenses of AATC incurred in providing for the performance of the maintenance and operations obligations are allocated in accordance with the formulas provided in the leases and billed to the AATC stockholders on a monthly basis.

On January 14, 1985, the debtor assigned the Lease, together with all rights to possession of the Gates, to Heller as security for the debtor's indebtedness to Heller. On April 16, 1987, Heller filed its motion for relief from stay to enforce its security interest in and assignment of the Lease and the Gates, in addition to other collateral. AATC responded to Heller's motion and sought from the Court a ruling that any relief granted to Heller as to the Lease and the Gates would be conditioned upon protection of AATC's asserted rights under § 365, including the cure of the debtor's payment defaults to AATC.

The first question to be addressed is whether the issues raised by AATC involving the protection of rights under 11 U.S.C. § 365 may be properly considered in the context of a motion to lift stay under 11 U.S.C. § 362. AATC argues that its rights arise under a lease and that rights arising under a lease are protected by the provisions of § 365. Heller asserts that § 365 is not applicable to its motion, pursuant to § 362, to lift the automatic stay. Since AATC asserts that its rights arise under the Lease and it does not appear that AATC could have any greater rights than the lessor, the Court will approach this issue by inquiring whether a lessor would be entitled to require that any order granting relief from the stay to an assignee/pledgee of the tenant's interest be conditioned upon protection of the lessor's rights under § 365, including the cure of defaults to the lessor.[1]

---

1. The City, as lessor in this case, has attempted to raise this issue directly by filing a "joinder" with AATC's response. This pleading by the City seeks to have any order granting relief from stay to Heller conditioned upon the protection of the City's rights under § 365. However, in the "Consent to Assignment and Security Agreement" executed concurrently with the assignment of the Lease, the City consented to the assignment upon the condition that Heller

One case involving such a situation appears to provide some support for the proposition that a lessor's rights under § 365 take precedence over the rights of a creditor holding a security interest in or a conditional assignment of a lease. In *In re Cobham Enterprises*, 62 B.R. 191 (Bankr. S.D.N.Y.1986), a lessor sought an order compelling the debtor/lessee to surrender the lease to the lessor pursuant to § 365. A creditor having security through an escrowed assignment of the lease opposed the motion and sought court approval of a stipulation with the debtor/lessee which proposed to surrender the debtor's leasehold to the creditor. The Court held that the lease must be surrendered to the landlord because the time to assume the lease had expired and because the defaults under the lease could not be cured by the creditor. In reaching this decision the Court in *Cobham Enterprises* made the following statement:

> Whether the stipulation that [the creditor and the lessee] seek to have approved might constitute an assumption, we need not so decide. The stipulation makes no provision, as § 365(b)(1) requires, for cure of the defaults and there is no evidence of any adequate assurance that [the lessee] pursuant to § 365(b)(1), or [the creditor] as assignee pursuant to § 365(f)(2) ... will perform the tenant's obligations under the lease.

*In re Cobham Enterprises*, 62 B.R. at 195 (footnote omitted).

The problem with these statements, in this Court's opinion, is that there must be an assumption or an assignment by the trustee or debtor-in-possession before the § 365 requirements of curing default and providing adequate assurance of future performance are triggered. 11 U.S.C. §§ 365(b)(1), (f)(2). The *Cobham Enterprises* decision thus appears to turn mainly on the automatic rejection of the lease, pursuant to § 365(d)(4), upon which the

lease is required to be immediately surrendered to the lessor. This, in turn, leaves the debtor/lessee with no interest in the lease which the creditor could look to as collateral.

■ Since the Lease in this case has not been rejected, this Court is faced with the issue which the *Cobham Enterprises* Court attempted to avoid: whether a secured creditor attempting to exercise its rights as assignee to to a lease as collateral must cure defaults under the lease and otherwise comply with the § 365 requirements for assumption. The Court is of the opinion that lifting the stay as to such a creditor/assignee does not constitute an assumption or an assignment of the type that § 365 was intended to encompass. While some provisions of § 365 apply to the Lease in question no matter what else occurs in the bankruptcy case (such as the provision for automatic rejection under § 365(d)(4)), the provisions sought to be enforced by AATC apply only if the Lease is assumed pursuant to § 365(b)(1), or assigned by the trustee or debtor-in-possession pursuant to § 365(f)(2)(A).

Viewing Heller's interest as a conditional assignment for security which Heller could have elected to exercise upon the debtor's default and which Heller now seeks to have the option to exercise by having the stay lifted, the Court feels that such an assignment is not one which is contemplated by § 365(f)(2)(A) to require assumption and cure. This is so because the assignment to Heller is not one which the trustee or debtor-in-possession decided to enter into. Instead, the Lease was assigned to Heller prior to bankruptcy with the proviso that Heller would only exercise its rights as assignee/lessee if Air Atlanta, Inc. defaulted on its obligations to Heller. The condition precedent to Heller exercising its rights as assignee has occurred prior to bankruptcy. Lifting the stay to allow Heller the option to exercise such rights

bring the Lease current should Heller elect to exercise its rights as lessee. Furthermore, the City agreed to allow Heller thirty (30) days in which to make its election starting from the date of notice of termination of the Lease or even from the date the stay in bankruptcy is

lifted or the Lease is rejected. Under these circumstances, the Court is of the opinion that the City and Heller have already agreed to the protection of the City's rights, including the right to have arrearages cured, and the City's "joinder" need not be addressed at this time.

should not trigger § 365(f)(2). This Code provision was meant to apply to a situation in which a debtor-in-possession assigns its leasehold interest and not one in which the pre-bankruptcy entity conditionally assigns its interest as security, even though the actual assignment occurs post-bankruptcy when the stay is lifted and the creditor elects to exercise its rights.

■ This result is also mandated when one considers what could have occurred in this situation outside of the context of the lessee as a debtor in bankruptcy. If the Lease was in default but not yet terminated, and payments to Heller were also in default, Heller could have exercised its rights under the assignment and become the lessee under a defaulted lease. Absent the agreement with Heller to cure defaults, Heller would not, upon becoming lessee, become liable to be sued by the lessor for past arrearages by the predecessor lessee. (However, Heller might, as a practical matter, have to cure such defaults if they could not be collected from the prior lessee and Heller wished to avoid the termination of its leasehold estate). Thus, outside of bankruptcy, the lessor could not have insisted that the creditor cure defaults prior to a conditional assignment's taking effect. The provisions of § 365 were not intended to give a lessor any greater rights as to an assignee/secured creditor, but were instead intended to protect the lessor if the debtor/lessee opts to exercise certain rights the lessee might not have absent bankruptcy—i.e. to assume or assign a lease which is in default.

■ Since a lessor, such as the City, could not have required a creditor in Heller's position to cure defaults before seeking to have the stay lifted, it follows that AATC, which claims that its rights also arise under the Lease,[2] is also not entitled to the § 365 protections which apply when a lease is assumed or assigned.

■ AATC argues that, if Heller fails to exercise its right to become lessee and sell off the lessee's interest, the claims by

AATC and the City will continue to accrue. However, this is always the case prior to any rejection of a lease. AATC further asserts that if the Lease is rejected while Heller is trying to find a purchaser, the estate would lose a valuable asset without any benefit in return if Heller ultimately declines to exercise its assignment. This concern does not appear to be cause to deny Heller's motion, but rather to require that Heller notify the debtor of Heller's decision not to exercise its assignment so that the debtor, if the Lease has not been rejected, can attempt to find a purchaser/assignee of its own.

■ Finally, AATC's arguments that it is entitled to recover the amounts owed to it as administrative expenses under § 503 or, from Heller, as costs of preserving Heller's collateral under § 506(c) may be raised at a later time by filing the proper motion or proceeding, but they do not at this time present a bar to the relief requested by Heller.

Accordingly, it is ORDERED that the objections raised by AATC in its response to Heller's motion to lift stay are OVERRULED. Heller and the debtor may present the Court with their consent order as to the Lease and Gates, with provisions for the protection of the estate consistent with this Order.

---

2. Because of this decision, the Court need not reach AATC's contention that its rights arise under the Lease even though AATC was not a party to the Lease.